Opinion
 

 BENKE, Acting P. J.
 

 The trial court in this dissolution proceeding permitted respondent to take a $700 a month hardship deduction for support of his elderly mother. On appeal, appellant contends the trial court abused its discretion in doing so. We agree. There is no evidence in the record that payment of both the otherwise mandated level of child support and $700 in support for respondent’s mother would create any extraordinary or unusual hardship. Accordingly, we reverse the trial court’s order with instructions.
 

 I
 

 Factual and Procedural Background
 

 Appellant Martha J. Gill and respondent Michael E. Butler were married in 1982 and separated in 1983. The parties have three children: Meghan, bom in May 1978; Brendan, bom in August 1982; and Shannon, bom in September 1983. Following dissolution of the marriage the children lived with their mother in Colorado. However in 1992 Meghan moved to Butler’s home in San Diego.
 

 Initially, Butler was ordered to pay a total of $480 a month in child support; later that amount was raised to $528 a month and eventually Butler voluntarily increased his support to $725 a month. Even after Meghan moved into his home, Butler continued paying Gill $725 in monthly child support. However in March 1994 Butler reduced his support payments to $352 a month.
 

 On July 1, 1994, Gill filed an order to show cause in the trial court in which she asked for an increase in child support. The court granted Gill’s request and ordered that child support be increased to $738 per month as of July 1,1994. In arriving at that amount the trial court deducted $700 a month from Butler’s $6,160 in gross monthly income. The deduction was based on Butler’s contribution to the support of his elderly mother.
 

 The trial court found Butler owns the home in which his mother lives and contributes $700 a month toward payment of the $1,200 a month mortgage
 
 *465
 
 on the home. The court further found Butler’s mother lives on a fixed income of $1,200 a month and could not meet her living expenses without the contribution Butler makes to her support.
 

 The trial court found the deduction for support of Butler’s mother was either an extreme financial hardship deduction under Family Code
 
 [1]
 
 sections 4070 and 4071 or a special circumstance under section 4057, subdivision (b)(5), which permitted departure from the guideline formula set out in section 4055. Without the deduction, the parties agreed the guideline formula would require that Butler pay $1,000 a month in support.
 

 Gill filed a timely notice of appeal from the trial court’s order.
 

 II
 

 Issue on Appeal
 

 On appeal Gill contends the trial court abused its discretion in deducting from Butler’s gross income the support Butler provides to his mother.
 

 III
 

 Discussion
 

 “[T]he trial court’s determination to grant or deny a modification of a support order will ordinarily be upheld on appeal unless an abuse of discretion is demonstrated. [Citations.]”
 
 (County of San Diego
 
 v.
 
 Sierra
 
 (1990) 217 Cal.App.3d 126, 130 [265 Cal.Rptr. 749]
 
 (Sierra);
 
 see also
 
 County of Lake
 
 v.
 
 Antoni
 
 (1993) 18 Cal.App.4th 1102 [22 Cal.Rptr.2d 804]
 
 (Antoni).)
 
 However, in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.
 
 (County of San Diego
 
 v.
 
 Guy C.
 
 (1994) 30 Cal.App.4th 1325, 1336 [36 Cal.Rptr.2d 222]
 
 (Guy C.);
 
 see also
 
 In re Marriage of Fini
 
 (1994) 26 Cal.App.4th 1033, 1042 [31 Cal.Rptr.2d 749].)
 

 In
 
 Sierra
 
 we held a father’s support of his parents and two siblings was not a hardship deduction within the meaning of former Civil Code section 4725. We noted “ ‘[s]ection 4725 allows a deduction for extreme financial hardship when it is due to “justifiable expenses resulting from the circumstances enumerated in
 
 this
 
 section ...[,] the plain language of section 4725 limits the type of expenses that may be deducted as hardship expenses to
 
 *466
 
 those specifically enumerated within its provisions.”’
 
 (Sierra, supra, 217
 
 Cal.App.3d at pp. 131-132.) Because the support of parents or siblings was not among the circumstances enumerated in former Civil Code section 4725, we found that no hardship deduction on those grounds was available. (217 Cal.App.3d at p. 133.)
 

 Civil Code section 4725 was reenacted in substantially the same form as sections 4070 and 4071. Section 4070 states: “If a parent is experiencing extreme financial hardship due to justifiable expenses resulting
 
 from the circumstances enumerated in Section 4071,
 
 on the request of a party, the court may allow the income deductions under Section 4059 that may be necessary to accommodate those circumstances.” (Italics added.) Section 4071 then enumerates the same circumstances previously enumerated in former Civil Code section 4725. As was the case with its statutory predecessor, section 4071 does not include support of a parent or sibling as an enumerated hardship circumstance.
 

 Where, as here, a statutory provision has been reenacted without substantial change, it is presumed the Legislature intended to incorporate previous appellate construction of the statute.
 
 (Wilkoff
 
 v.
 
 Superior Court
 
 (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134];
 
 People
 
 v.
 
 Gangemi
 
 (1993) 13 Cal.App.4th 1790, 1797 [17 Cal.Rptr.2d 462].) Thus, given our holding in
 
 Sierra
 
 and the reenactment of substantially the same provisions we considered in
 
 Sierra,
 
 Butler was not entitled to a hardship deduction under sections 4070 and 4071.
 

 This leaves for consideration the trial court’s alternative determination Butler’s support of his mother was a special circumstance under section 4057, subdivision (b)(5), which permits departure from the guideline formula. Initially, “[w]e are mindful that several recent appellate opinions have taken pains to emphasize that under the current child support scheme, trial courts retain a measure of discretion to interpret the ‘special circumstances’ language of former rule 1274(e)(8) and current Family Code sections 4052, 4053, subdivision (k), and 4057, subdivision (b)(5). [Citations.]”
 
 (Guy C., supra,
 
 30 Cal.App.4th at p. 1334.)
 

 However, as we pointed out in
 
 Guy C,
 
 even this discretion is somewhat constrained. In
 
 Guy C.
 
 we considered parents who adopted a three-year-old child with undisclosed behavioral problems. Over the course of the child’s life, the behavioral problems worsened and the trial court found that as an adolescent the child was manipulative, lacking in remorse, cruel, maladjusted and sociopathic. The trial court noted that given the severity of her psychological problems, the child was eventually removed from her adoptive
 
 *467
 
 parents’ home. The trial court found that given the serious difficulties the parents faced in attempting to provide a home for the child, their obligation to provide support for her out-of-home placement should be substantially reduced.
 

 We rejected the trial court’s reasoning. We noted that “[u]nfortunately, neither a natural or an adopted child comes with a warranty of merchantability, and life may visit tragedies and hardships equally upon both natural parents and adoptive parents.”
 
 (Guy
 
 C.,
 
 supra,
 
 30 Cal.App.4th at p. 1334.) We also found that the family history factors relied upon by the trial court were “too subjective and too remote from the parental support obligation to justify departure from the guideline support amounts.”
 
 (Id.
 
 at p. 1335.) We concluded that “while the scope of the ‘special circumstances’ which justify a departure from support guideline amounts was not very clearly defined by the Legislature or the Judicial Council, and is thus subject only to abuse of discretion analysis, we are confident that the scope of ‘special circumstances’ is not so broad as to allow the particular noneconomic family background factors and dependency history which were considered here.”
 
 (Id.
 
 at p. 1336.)
 

 Similarly in
 
 In re Marriage of Wood
 
 (1995) 37 Cal.App.4th 1059, 1069 [44 Cal.Rptr.2d 236], the Court of Appeal reversed an order which had lowered a father’s child support because his former wife had married someone with considerable wealth. The court refused to permit the general discretion provided by section 4057, subdivision (b), to entirely circumvent the statutory prohibition on consideration of the income of a custodial parent’s new spouse. (See § 4057.5, subd. (a)(2).) In harmonizing the two provisions, the court stated: “In our view, the only time a trial court may consider new mate income is when not considering it will result in extreme hardship to a child.” (37 Cal.App.4th at p. 1069.)
 

 The cases which have employed section 4057, subdivision (b)(5), in allowing a downward deviation from the guideline formula are consistent with the holdings in
 
 Guy C.
 
 and
 
 In re Marriage of Wood.
 

 For instance, in
 
 Antoni,
 
 upon which the trial court relied, a noncustodial parent had been paying $100 a month in child support for nine years. Relying on the statutory guidelines, the county, which had been providing aid to the child, asked that support be increased to the $414 a month required by application of the guildeline. The trial court found the noncustodial parent had a net income of $1,948 a month, was supporting a younger child from a second marriage and a stepchild and had accumulated $44,000 in consumer debt in meeting his living expenses. The trial court awarded $294 in support
 
 *468
 
 and justified the deviation from the guideline amount in part on the basis of the support the parent provided for his second child. However, the trial court also relied on the support the parent provided for his stepchild and the cost of servicing his large accumulated debt. On appeal, the county argued the trial court could not deviate from the guideline based on support of a stepchild or staggering consumer debt.
 

 In rejecting these arguments, the Court of Appeal determined the trial court had discretion to consider the noncustodial parent’s difficult financial situation at the time the county moved to quadruple the existing support order and the impact such an increase would have on his second child and stepchild.
 
 (Antoni, supra,
 
 18 Cal.App.4th at p. 1106.) Given those circumstances the Court of Appeal found no abuse of discretion in the trial court’s decision to triple rather than quadruple the existing level of support.
 
 (Ibid.)
 

 In much the same vein is the holding in
 
 City and County of San Francisco
 
 v.
 
 Miller
 
 (1996) 49 Cal.App.4th 866, 869 [56 Cal.Rptr.2d 887]
 
 (Miller).
 
 There, application of the guideline and the express low-income adjustment provided by section 4055, subdivision (b)(7), would nonetheless have left the supporting parent, who was disabled, with $14 in which to meet his monthly expenses. In upholding an order which reduced the support obligation to zero, the court relied on the discretion provided by section 4057, subdivision (b)(5), and stated: “The County’s argument that low income is not a ‘special circumstance’ misses the mark. Miller’s income was not only low, he had virtually nothing left after his wages were garnished and his rent was paid in which to meet his monthly expenses. Moreover, Miller maintains physical responsibility of the children for 20 percent of the time. Presumably he must attempt to feed them during this period. Given these circumstances, the court did not abuse its discretion by reducing Miller’s support obligation to zero and urging him to locate a roommate in order to reduce his monthly expenses.”
 
 (Miller, supra,
 
 49 Cal.App.4th at p. 869.)
 

 Considered in light of these cases, the record here will not support application of the special circumstances exception to the guideline amount otherwise required by section 4055. First, like the unfortunate circumstances we described in
 
 Guy C.,
 
 the fact Butler’s elderly mother looked to her son for financial support is not in any sense so unusual or extraordinary as to diminish Butler’s obligation to his children. Aging parents have, for countless generations, looked to their offspring for financial support as their ability to provide for themselves declines. The burden of supporting and, in many cases, caring for an elderly parent is an obligation borne by scores of adults who are also required to continue support of their own children.
 

 Second, while we have little doubt that in providing his mother with $700 a month in assistance Butler is acting principally out of a sense of duty
 
 *469
 
 and responsibility for her, we must also recognize the payments represent an investment by Butler in the home where his mother lives. The possibility Butler could eventually recover all or a portion of his payments makes it somewhat remote from his child support obligation. (See
 
 Guy
 
 C.,
 
 supra,
 
 30 Cal.App.4th at p. 1335.)
 

 More importantly, there has been no showing Butler would have any acute difficulty in providing both the full guideline level of support to his children and support for his mother. Indeed, in light of Butler’s $6,160 in gross income and the $725 a month he had been paying until March 1994, the $1,000 a month in support required by the guideline in the absence of the deduction does not represent the sort of drastic increase in a child support burden considered by the court in
 
 Antoni
 
 or anything close to the desperate situation the guideline would have created in
 
 Miller.
 

 In short, as in
 
 Guy C.,
 
 although we recognize the trial court has discretion in exceptional circumstances under section 4057, subdivision (b)(5), to deviate from the guidelines, the record here does not present such circumstances. The trial court’s order is reversed with instructions to enter a new order awarding Gill $1,000 a month in child support from July 1, 1994.
 

 Appellant to recover her costs of appeal.
 

 Haller, J., and McDonald, J., concurred.
 

 [1]
 

 All further statutory references are to the Family Code unless otherwise indicated.